IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
_____

RUSBER GONZALEZ MENDEZ, Individually and on
behalf of all others similarly situated,

                     Plaintiff,

                                      Civil Action No. 1:21-cv-05289-
                                      RPK TAM

        -against-

OLD DOMINION FREIGHT LINE, INC.,

                     Defendant.

_____

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DISMISSAL OF THE COMPLAINT

BLAU LEONARD LAW GROUP, LLC
23 Green Street, Suite 105
Huntington, NY 11743
(631) 458-1010

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................iii

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ........................................................................................... 2

ARGUMENT ................................................................................................................ 4

   I.   THE STANDARD UNDER RULE 12(b)(6) ................................................. 4

   II.   THE MOTOR CARRIER EXEMPTION ...................................................... 5

   III.  THE SMALL VEHICLE EXCEPTION TO THE MCA EXEMPTION ............. 8

   IV.  MATERIAL ISSUES OF FACT EXIST WHETHER PLAINTIFF IS EXEMPT UNDER THE MCA ........................................................................... 11

   A.   The Bates Declaration ...................................................................... 12

   B.   Application ......................................................................................... 14

   V.   ANALYSIS OF THE MCA EXEMPTION CAN BE MADE ON A CLASS WIDE BASIS ........................................................................................ 17

   VI.  PLAINTIFF'S NYLL OVERTIME WAGE CLAIMS ARE MERITORIOUS ... 19

   VII.   PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND THE COMPLAINT .......................................................................................... 26

CONCLUSION .......................................................................................................... 28

# TABLE OF AUTHORITIES

*Aikins et al v. Warrior Energy Services Corp.*, 2015 WL 1221255 [SD Tex 2015]....... 9

*Allen v. Coil Tubing Services, L.L.C.,* 55 F.3d 279 [2014] ......................................... 19

*Amini v. Oberlin Coll.*, 259 F.3d 493, 502 [6th Cir 2001] ............................................ 5

*Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 [1960]............................................ 11

*Ashcroft v. Iqbal*, 556 U.S. 662 [2009] ........................................................................ 5

*Ballard v Community Home Care Referral Serv.*, 264 AD2d 747, 747

    [2d Dept 1999] ...................................................................................................... 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 ........................................................... 4

*Chaohui Tang v. Wing Keung Enters.*, 2016 U.S. Dist. LEXIS 90455, *16 [EDNY

    2016]...................................................................................................................... 6

*Chun Jie Yin v. Kim*, 2008 WL 906736 [EDNY 2008] ............................................... 26

*Cooper v. Parsky*, 140 F.3d 433, 440 [2d Cir 1998] ...................................................... 4

*Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 [1974] ................................... 5

*Cruz v. AAA Carting and Rubbish Removal, Inc.*, 116 F. Supp. 3d 232, 247

    [SDNY 2015] ......................................................................................................... 7

*Dauphin v. Chestnut Ridge Transp., Inc.*, 544 F. Supp. 2d 266, 274-75

    [SDNY 2008] ......................................................................................................... 7

*Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 531 [2d Cir 2009] ........................ 11

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 [2d Cir 2010]............................. 4

*Edwards v Jet Blue Airways Corp.* 2008 NY Slip Op 28051 [19 Misc 3d 345] [Sup

    Kings 2008] .......................................................................................................... 21

*Edwards v. Jet Blue Airways Corp.*, 21 Misc.3d 1107(A), 873 N.Y.S.2d ................... 22

*Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.*,

    45 N.Y.2d 471 ..................................................................................................... 24

*Foman v. Davis*, 371 U.S. 178, 182 [1962].................................................................. 27

*Friedman v. Chesapeake & O.R. Co.*, 261 F. Supp. 728 [SDNY 1966]...................... 28

*Giraldo v. Kessler*, 694 F.3d 161, 163 [2d. Cir. 2012] ................................................. 5

*Golden v. Merrill Lynch & Co.*, 2007 WL 4299443, at *17 [SDNY 2007] .................. 11

*Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 111 [2d Cir. 2015] ................................... 25

*Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 175 [2009] ............................... 24

*Hernandez v. Alpine Logistics, LLC*, 2011 WL 3800031, at *5
[WDNY Aug 29, 2011] ................................................................................................ 10

*Home Care v New York State Dept. of Health*, 5 NY3d 499 [2005] ........................... 24

*James Adam Howard v. Old Dominion Freight Line, Inc.*, E.D. Tenn., [Civ. Act. No.
3:18-cv-00391, September 18, 2018] .......................................................................... 17

*Kurcsics v. Merchants Mut. Ins. Co.*, 49 N.Y.2d 451, 459 [NY 1980] ......................... 23

*Levinson v. Spector Motor Serv.*, 330 U.S. 649, 67 S. Ct. 931, 944 [1947] ................. 15

*Marshall v. Burger King Corp.*, 504 F. Supp. 404, 406-07 [EDNY 1980] .................. 11

*Matter of Harbolic v Berger*, 43 N.Y.2d 102 ................................................................ 24

*Matter of Heinlein v New York State Off. of Children & Family Servs.*, 60 AD3d
1472, 1473 [4th Dept 2009] ........................................................................................ 24

*Matter of Jones v Berman*, 37 N.Y.2d 42 ............................................................... 24, 26

*Mayan v. Rydbom Exp., Inc.*, 2009 WL 3152136, at *9 n.12 [ED Pa 2009] ................. 9

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 [2d Cir. 2007] .................... 4

*Middle Atlantic Utilities Co. v. S.M.W. Development Corp.*, 392 F.2d 380 [2d Cir
1968] ............................................................................................................................. 28

*Mitchell v. Meco Steel Supply Co.*, 183 F. Supp. 777, 779 [SD Tex 1956] .................. 15

*Morris v. McComb*, 332 U.S. 422 ................................................................................... 16

*Mullins v. City of New York*, 653 F.3d 104, 113 [2d Cir 2011] .................................... 11

*Opelika Royal Crown Bottling Co. v. Goldberg*, 299 F.2d 37, 42-43 [5th Cir 1962] .... 8

*Perez v. Time Moving & Storage Inc.*, 2008 WL 5662070, at *2 [SDNY 2008] ........... 5

*Prieto v. Old Dominion Freight Line, Inc.*, S.D. Fla., Civ. Act. No. [18-20536-JLK,
Feb. 12, 2018] .............................................................................................................. 17

*Pyramid Motor Freight Corp. v. Ispass*, (330 U.S. 695, 67 S.Ct. 954, 91 L.Ed. 1184
[1947] ............................................................................................................................. 7

*Roche v. S-3 Pump Service, Inc.*, 154 F.Supp.3d 441, 448-449 [WD Tex 2016] ......... 11

*Romero v. Flaum Appetizing Corp.*, 2011 WL 812157, at *4 [SDNY 2011] ................. 5

*Saenz v. Old Dominion Freight Lines, Inc.*, (Case No. 1:18-cv-04718-TCB, USDC, NDGA, Atlanta Division ............................................................. 12

*Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 [2d Cir. 2018] ................................. 4

*Songer v. Dillon Res., Inc.*, 618 F.3d 467, 475 [5th Cir 2010] .................................. 18

*Troutt v. Stavola Bros.*, 107 F.3d 1104, 1108 [4th Cir 1997] .................................... 18

*United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 [2009] ........ 20

*United States v. Balde*, 943 F.3d 73, 81 [2d Cir. 2019] .............................................. 25

*Walden v. Sanitation Salvage Corp.*, 2016 WL 7243547 [SDNY 2016] ...................... 6

*Williams v. Tri-State Biodiesel, L.L.C.*, 2015 WL 305362, at *5 [SDNY 2015] ........... 6

*Wirtz v. C & P Shoe Corp.*, (336 F.2d 21, 29 [5th Cir 1964 .......................................... 7

## PRELIMINARY STATEMENT

Plaintiff brings this action against Defendant, OLD DOMINION FREIGHT LINE, INC. ("ODFL"), pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), and the N.Y. Labor Law §§ 190 et seq. and 650 et seq. (the "NYLL"), to recover unpaid wages for work performed and overtime compensation including applicable liquidated damages, interest, attorneys' fees, and costs.

ODFL is claiming that Plaintiff worked as a Dockworker, not a Switcher, and thus cannot represent the collective class of switchers that he proposes. Further, ODFL contends that Plaintiff's individual FLSA claims also fail, because whatever Plaintiff's job title, [whether Switcher or Dockworker], he regularly performed the duties of a loader, which qualifies him as exempt, under the Motor Carrier Act exemption ("MCE") 29 U.S.C. § 213(b).

If this claim is true, there is an issue of fact whether Plaintiff qualifies under the small vehicle exception to the SAFETEA–LU Technical Corrections Act of 2008, Pub. L. No. 110-244, 122 Stat. 1572 ("TCA"), which provides, in pertinent part, that an employee loading/unloading vehicle weighing less than 10,000 pounds must be paid overtime in compliance with the FLSA. Those employees are "covered" under the FLSA, notwithstanding the MCA exemption.

Further, if ODFL's contentions are accepted and he is exempt under the MCA, Plaintiff's claims under the NYLL requires that ODFL pay him at a rate that equals or exceeds 1.5 times the state's minimum wage (12 N.Y.C.R.R. § 142-2.2; see also *Hayward v. IBI Armored Servs., Inc.*, 954 F.3d 573, 575 [2d Cir 2020]

(explaining that Motor Carrier Act-exempt employees in New York are entitled to 1.5 times the New York minimum wage for hours worked over 40).

The record on this motion, and in particular, the two (2) sworn declarations of Plaintiff (**Exhibit "A"**) and (ECF Doc. No.13-1 earlier filed in support of his pending Motion for FLSA Collective Certification), clearly contradict ODFL's misclassification of his job duties and create multiple material issues of fact, which preclude the granting of an order dismissing the Complaint.

In sum, at this stage of the litigation and construing the Motor Carrier exemption narrowly and strictly against the Defendant, ODFL has not discharged or satisfied its burden of showing that the Plaintiff engaged in activities affecting the safety of operation of motor vehicles transporting property in interstate commerce. Alternatively, ODFL has failed to demonstrate that the small vehicle exception of the TCA is not applicable.

The Motor Carrier exemption does not "plainly and unmistakably" apply at this time, and accordingly, partial dismissal of the Complaint on the FLSA overtime claim should be denied, as a matter of law (*Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217,222 [2d Cir 2002] (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388,392, [1960]).

## STATEMENT OF FACTS

ODFL is one of the largest North American less-than-truckload ("LTL") motor carriers, providing regional, inter-regional and national LTL services through

an expansive network of service centers located throughout the continental United States.

As of June 2021, ODFL had more than 22,000 full time employees and operated approximately 248 service centers across the United States.

From 2015 through November 2019, ODFL was the employer of Plaintiff and determined the terms of conditions of his employment, including (but not limited to) his employment status, compensation, work hours, benefits, and nonexempt/exempt classification.

Plaintiff alleges that he was employed with the duties of a "yard switcher" and operated switcher tractors to move trailers to and from staging areas and loading/unloading docks within ODFL's yard located in Brooklyn (ECF Doc. No. 13-1).

Plaintiff did not drive trucks or move the trailers on public roads. From time to time, Plaintiff would assist dock workers in loading/unloading trailers. He would furnish physical assistance, or operate a forklift, when necessary, in loading heavy pieces of freight, or deposits pieces of freight in the vehicle for someone else to distribute and secure in place or arrange pieces of freight in the vehicle pursuant to instructions given by dock workers in each instance. Plaintiff never had responsibility or discretion to exercise judgment in planning and building a balanced load or in placing, distributing, or securing the freight (ECF Doc. No.13-1).

Plaintiff alleges that he was regularly required and did work more than forty (40) hours each workweek. In fact, he worked at least 55 hours per week. In 2019,

he was paid hourly at a rate of $26.60. At all relevant times, he was paid straight time (i.e, regular hourly rates) for **some** hours in a workweek in excess of 40. Plaintiff claims that from 2016 to 2019, ODFL failed to pay him overtime compensation at 1.5 times his regular rate of pay **for all** workweeks in excess of 40 hours.

## ARGUMENT

### I.   THE STANDARD UNDER RULE 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b) (6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor (*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 [2d Cir. 2007]). "A complaint is . . . deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint" (*Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 [2d Cir. 2018]).

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof'" (*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 [2d Cir 2010] (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 [2d Cir 1998]). On a motion to dismiss for failure to state a claim, the question is "not whether a plaintiff will ultimately prevail" (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545). The question is whether the plaintiffs should be given the opportunity to offer evidence to support their claims. The Court should not

dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face" (*Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (*Ashcroft v. Iqbal*, 556 U.S. 662 [2009]).

A court may take judicial notice of "relevant matters of public record" (*Giraldo v. Kessle*r, 694 F.3d 161, 163 [2d Cir. 2012]); see also Rule 201(b), Fed. R. Civ. P. (permitting judicial notice of facts "not subject to reasonable dispute") without converting a motion to dismiss into one for summary judgment (*Amini v. Oberlin Coll.*, 259 F.3d 493, 502 [6th Cir 2001]).

The Supreme Court has explicitly indicated that the employer bears the burden of demonstrating that an FLSA exemption applies (*Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 [1974]). ODFL has failed to sustain this burden of proof. Here, a determination of the applicability of the Motor Carrier exemption "requires a detailed, fact-specific inquiry" (*Romero v. Flaum Appetizing Corp.*, 2011 WL 812157, at *4 [SDNY 2011]; see also *Perez v. Time Moving & Storage Inc.*, 2008 WL 5662070, at *2 [SDNY 2008] ("[A]s long as the facts pleaded about their job duties render it plausible that plaintiffs fall outside the [motor carrier] exemption, the complaint cannot be dismissed")).

## II.   THE MOTOR CARRIER EXEMPTION

The Motor Carrier exemption "exempts from the FLSA's overtime provision any employee with respect to whom the Secretary of Transportation ("Secretary")

has power to establish qualifications and maximum hours of service pursuant to the

MCA (49 U.S.C. § 31502)" (*Walden v. Sanitation Salvage Corp.*, 2016 WL 7243547

[SDNY 2016]). "Whether the motor carrier exemption applies to an employee

depends on the nature of both the employer's and the employee's activities" (*Id*).

"First, the employer must be within the jurisdiction of the Secretary by virtue of

operating as a 'motor carrier,' as defined by the MCA" (*Id*).

> Second, the employee must be a 'driver, driver's helper, loader, or mechanic'
> whose work directly affects the safety of operation of motor vehicles in the
> transportation on the public highways of passengers or property in interstate
> or foreign commerce within the meaning of the MCA.

(*Id*) (quoting 29 C.F.R. § 782.2(b)(2)).

> In making this second determination, the name given to the employee's
> position is not controlling; rather, it is the character of the activities involved
> in the employee's performance of his job that controls.

(*Id*).

> If not all of an employee's activities affect the safety of operations of motor
> vehicles in interstate commerce, a court must consider the character of the
> activities rather than the proportion of either the employee's time or his
> activities.

(*Williams v. Tri-State Biodiesel, L.L.C*., 2015 WL 305362, at *5 [SDNY 2015]).

In addition to the issue of whether an employee's activities affect the safety of

operations of motor vehicles, for the exemption to apply the employees' activities

must affect the safety of operations of motor vehicles in interstate commerce

(*Chaohui Tang v. Wing Keung Enters.*, 2016 U.S. Dist. LEXIS 90455, *16 [EDNY

2016]). "There are two ways to establish that the employee had sufficient

involvement in interstate commerce" (*Id*. at *16-*17). One is if "interstate travel is a

'natural, integral, and inseparable part of the employee['s] duties'" (*Id* at *17)

(quoting *Dauphin v. Chestnut Ridge Transp., Inc.*, 544 F. Supp. 2d 266, 274-75

[SDNY 2008]). The other is considering "whether the employee was responsible for goods involved in a 'continuity of movement in the flow of interstate commerce'" (*Cruz v. AAA Carting and Rubbish Removal, Inc.*, 116 F. Supp. 3d 232, 247 [SDNY 2015]).

Lastly,

> courts may apply the *de miminis* rule which states that 'where the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis, the exemption will not apply to [the employee] in any workweek so long as there is no change in his duties.

(*Id* at*18-*19 (quoting 29 C.F.R. § 782.2(b)(3)).

> Therefore, if the employee's activities in relation to safety in interstate commerce are merely trivial or the employer overall engages in so little interstate commerce as to be de minimis, the Court may properly find that the employee is not exempt under the MCA.

(*Id* at*19).

In *Pyramid Motor Freight Corp. v.* Ispass, (330 U.S. 695, 67 S.Ct. 954, 91 L.Ed. 1184 [1947]), the United States Supreme Court recognized a *de minimis* exception where, e.g.,

> the mere handling of freight at a terminal, before or after loading, or even the placing of certain articles of freight on a motor carrier truck ... form[s] so trivial, casual, or occasional a part of an employee's activities, or ... relate[s] only to ... such [a] limited handling of [the freight articles] that the activities cannot fairly be characterized as affecting "safety of operations."

(*Id* at 708).

In *Wirtz v. C & P Shoe Corp.*, (336 F.2d 21, 29 [5th Cir 1964]), the Fifth Circuit Court of Appeals applied *Pyramid* and determined that the exemption was inapplicable to warehousemen who assisted in loading delivery trucks but lacked discretion as to the manner in which loading was done, and who sporadically rode in

7

or drove the trucks, but not as part of their regular duties (See also *Opelika Royal Crown Bottling Co. v. Goldberg*, 299 F.2d 37, 42-43 [5th Cir 1962]) (warehouseman whose primary job was handling empty and full bottles within the warehouse, who only infrequently helped load supply truck, and who did not regularly load the distributing trucks was not subject to exemption since no part of his job involving assisting in the actual loading of any interstate vehicle and his infrequent help to driver of supply truck was *de minimis*).

## III.   THE SMALL VEHICLE EXCEPTION TO THE MCA EXEMPTION

Congress enacted the SAFETEA–LU Technical Corrections Act of 2008, Pub. L. No. 110-244, 122 Stat. 1572 ("TCA"), under which Section 306 provides that the FLSA is applicable to "a covered employee" notwithstanding the MCA Exemption. Thus, regardless of the terms of the MCA exemption, the overtime requirements of the FLSA apply to employees (1) who are employed by a motor carrier or motor private carrier, (2) whose work, in whole or in part, is defined as that of a driver, driver's helper, ***loader***, or mechanic and affects the safety of motor vehicles weighing 10,000 pounds or less in transportation on public highways, and (3) who perform duties on motor vehicles weighing 10,000 pounds or less (*Id*). This is known as the Small Vehicle Exception.

Like in prior cases dealing with the FLSA and MCA, if an employee's work with small vehicles is so trivial, casual, and insignificant as to be *de minimis*, then that work does not affect the safety of operation of motor vehicles in transportation

on public highways. Accordingly, such *de minimis* work activities cannot trigger the TCA, just like they cannot trigger the MCA (*Pyramid*, 330 U.S. at 708).

Given the language of section 306(c)(2), which states that a covered employee's work need only "in part" affect the safety of vehicles weighing 10,000 pounds or less, the majority of courts have held that that any meaningful use of lighter vehicles entitles employees to overtime under the FLSA regardless of how often they also work with heavy trucks. In *Aikins et al v. Warrior Energy Services Corp.*, (2015 WL 1221255 [SD Tex 2015]) the court stated:

> A more plausible reading is that, in order to be owed overtime notwithstanding the MCA, an employee must both (1) perform some work that "affect[s] the safety of operation of" smaller vehicles, and (2) it must be part of the employee's "duties" to do so. The "duties" element may prevent de minimis or aberrational activities outside the scope of an employees' routine duties from qualifying an employee for TCA coverage. It does not state or imply, however, that covered employees cannot also have substantial duties involving larger vehicles.

Thus, the "meaningful work" standard, as applied by other district courts, seems to require no more than that covered employees' work on vehicles weighing 10,000 pounds or less be more than *de minimis* (*Allen* 846 F. Supp. 2d at 705) (following *Mayan v. Rydbom Exp., Inc.*, 2009 WL 3152136, at *9 n.12 [ED Pa 2009]), which applied a *de minimis* threshold to TCA coverage)).

As discussed below, Plaintiffs' summary judgment evidence is sufficient to raise a fact issue even under this slightly more exacting standard.

The Department of Labor has endorsed this view, noting in a guidance document that "even in weeks where employees worked on vehicles weighing more

than 10,000 pounds (and thus were subject to Department of Transportation regulations), those employees would still be entitled to overtime if they worked on vehicles weighing less than 10,000 pounds" (*Hernandez v. Alpine Logistics, LLC*, 2011 WL 3800031, at *5 [WDNY Aug 29, 2011]) (discussing Department of Labor, Wage & Hour Division, Fact Sheet #19 [Nov 2009]).

Under the TCA, an employee driving or loading/unloading vehicles weighing less than 10,000 pounds must be paid overtime in compliance with the FLSA. Those employees are "covered" under the FLSA, notwithstanding the MCA exemption. Because it is the plaintiff's burden to establish coverage of the FLSA, it is the plaintiff's burden to establish the requisites under the FLSA statute—i.e., that he or she was employed by a covered defendant, that either the plaintiff was engaged in commerce or the employer is engaged in commerce, and that the plaintiff worked 40+ hours in a workweek without adequate compensation (29 U.S.C. §§ 203-212). If the plaintiff can prove up those elements, the FLSA requires overtime compensation as a default.

It is the employer's burden to demonstrate they are exempt from this default requirement to pay overtime. In the context of MCA/TCA cases, the burden must lie with the employer to establish that the MCA exemption applies, and that the TCA does not (*Aikins*).

ODFL has failed to sustain its burden of establishing that Plaintiff's work with small vehicles was merely *de minimis* and outside the scope of the Small Vehicle Exception. Accordingly, questions of material fact remain as to this issue

10

which preclude the granting of an order dismissing the Complaint (*Roche v. S-3 Pump Service, Inc.*, 154 F.Supp.3d 441, 448-449 [WD Tex 2016]).

## IV.   MATERIAL ISSUES OF FACT EXIST WHETHER PLAINTIFF IS EXEMPT UNDER THE MCA

Because the FLSA is a remedial law, exemptions "are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit" (*Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 531 [2d Cir 2009] (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 [1960]). Thus, "[t]he employer who invokes the exemption bears the burden of establishing that the employee falls within the exemption" (*Mullins v. City of New York*, 653 F.3d 104, 113 [2d Cir 2011]). In the Second Circuit, most courts have applied a preponderance of the evidence standard of proof (*Golden v. Merrill Lynch & Co.*, 2007 WL 4299443, at *17 [SDNY 2007]; "[I]n the Second Circuit, employers bear the burden of proof to establish an exemption only by a preponderance of the evidence" (citing *Marshall v. Burger King Corp.*, 504 F. Supp. 404, 406-07 [EDNY 1980]).

ODFL claims that Plaintiff was not a switcher but was actually employed by ODFL as a Dockworker ("Loader") who was trained on forklift operation, as well as load and safety distribution, safe traveling with a load, and truck loading and unloading.

In direct contradiction, Plaintiff's two (2) Declarations aver that he primarily operated switcher tractors to move trailers to and from staging areas and loading/unloading docks within ODFL'S yard located in Brooklyn (Exhibit "A", ECF

Doc. No. 13-1). From time to time, Plaintiff would assist dock workers in loading/unloading trailers, furnish physical assistance, or operate a forklift, when necessary, in loading heavy pieces of freight, or deposits pieces of freight in the vehicle for someone else to distribute and secure in place or arrange pieces of freight in the vehicle pursuant to instructions given by dock workers in each instance (Exhibit "A", ECF Doc. No. 13-1).

Plaintiff never had responsibility or discretion to exercise judgment in planning and building a balanced load or in placing, distributing, or securing the freight (Exhibit "A", ECF Doc. No. 13-1).

ODFL argues that "Whatever Plaintiff's job title, whether Switcher or Dockworker, Plaintiff regularly performed the duties of a loader, which triggers the MCA Exemption." As indicated below, the evidence renders this contention problematic and raises genuine issues of fact.

## A.    The Bates Declaration

In 2019, Dave Bates was Senior Vice President of Operations at ODFL and through his work in this position, possessed personal knowledge of and familiarity with the Company's operations and Service Centers nationwide.

In *Saenz v. Old Dominion Freight Lines, Inc.*, (Case No. 1:18-cv-04718-TCB, USDC, NDGA, Atlanta Division), a parallel FLSA class action brought by "switchers," ODFL submitted Bate's Declaration (**Exhibit "B"**) in support of its Motion to Dismiss on the issue of Motor Carrier Act exemption.

The Bates Declaration established the following facts pertinent to the instant litigation and pending Motion to Dismiss:

1.      ODFL has numerous types of employees who, at any given time in any given week, might work moving loaded and unloaded trailers between dock doors and designated areas in the "yard," which is a staging area for trailers that are dropped off or waiting to be picked up for interstate trips; (Exhibit "B" ¶11);

2.      ODFL employs individuals in jobs titled as "Switcher" and "Yard Switcher." The terms "switcher," "yard switcher," "hostler," and "yard jockey" are sometimes used to describe: (a) the job title of an employee; (b) some of the job duties performed by an employee, even if he does not work under the job title of "Switcher" or "Yard Switcher"; or (c) the vehicle driven by an employee while doing some of those duties (Exhibit "B" ¶12);

3.      Each Service Center must accomplish, with varying frequency, some, or all of the switching work necessary for the Service Center to operate; yet not all of ODFL's Service Centers employ workers under the job title of Switcher. As a result, numerous Service Centers rely on Dockworkers, Supervisors, and/or various types of drivers to perform switching duties when needed (Exhibit "B" ¶13);

4.      The frequency and duration of the need for switching work varies and Service Centers utilize Switchers in different ways. This significant variation in the way switching work is done, by whom, and when, exists from Service Center to Service Center (Exhibit "B" ¶13);

5.      Employees titled Switcher do not perform only switching duties in the yard. Switching is a function of the dock operations. In nearly all cases, employees are hired as Dockworkers who work solely on the dock, and the employees progress from there to performing switching duties after they have gained sufficient experience. If a Dockworker begins performing switching

13

duties, and is assigned the job title of Switcher, that employee must still perform duties on the dock (Exhibit "B" ¶14); and

6.    The nature and extent of each employee's duties (including the time, if any, that they spend on switching duties) are dependent day-to-day on the Supervisors managing the Service Center's work, the employees' own preferences, and the business needs at the Service Center. For example, Supervisors will call employees in from the yard to work on the dock based on the flow of the operations and the number of shipments to be processed (Exhibit "B" ¶15).

## B.    Application

In determining whether an employee falls within the MCA exemption, neither the name given to his position nor that given to the work that he does is controlling (*Pyramid Motor Freight Corp*. at 695). What is controlling is the character of the activities involved in the performance of his job.

For purposes of the MCA exemption a "loader" is an employee of a carrier subject to the Secretary's jurisdiction "whose duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country" (29 C.F.R. § 782.5(a)). A loader's duties will usually also include unloading and the transfer of freight between the vehicles and the warehouse, but he engages, as a "loader," in work directly affecting "safety of operation" so long as he has responsibility when such motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate . . . commerce will not be jeopardized (*Id*., see also *Wirtz v. C & P Shoe Corp*., 336 F.2d 21, 29 [5th

14

Cir 1964]) ("[A loader] share[s] in the exercise of discretion as to the manner in which the loading [is] done"). An employee need not devote all or even the majority of his time to safety-affecting activities to qualify as a loader (*Levinson v. Spector Motor Serv.*, 330 U.S. 649, 67 S. Ct. 931, 944 [1947]). Instead, "it is enough that a loader devote a substantial part of his time to activities affecting the safety of operation" (*Id* at 947, but see *Pyramid* at 960 ("[T]he mere handling of freight at a terminal, before or after loading, or even the placing of certain articles of freight on a motor carrier truck may form so trivial, casual or occasional part of an employee's activities, or his activities may relate only to such articles or to such limited handling of them, that his activities will not come within the kind of loading' which . . . affects safety of operation")).

It is undisputed that Plaintiff loaded motor vehicles as part of his ODFL employment. Plaintiff contends, however, that he was "merely furnishing physical assistance" and therefore were not affecting transportation safety within the meaning of the MCA. Plaintiff relies for support on the Fifth Circuit's decision in *Wirtz*, supra, where the court held that workers who followed a simple "last out, first in" method of loading and unloading were not acting as loaders because of the utter lack of discretion involved in those activities (*Wirtz* at 29, see also *Mitchell v. Meco Steel Supply Co.*, 183 F. Supp. 777, 779 [SD Tex 1956]) (while employee's duties from time to time included assisting with the loading and unloading of trucks, his connection with such activities was so casual and inconsequential as not to bring him within the exception to the FLSA).

Here, even if contradictory evidence is offered, regarding Plaintiff's loading and unloading activities, material issues of fact exist, forming the basis for the denial of the Motion to Dismiss the Complaint. These disputed issues include, but are not limited to:

1.   Whether Plaintiff engaged in more than mere physical assistance or operated a forklift in a manner affecting transportation safety within the meaning of the MCA;

2.   Whether Plaintiff was responsible for using his discretion to build a balanced and safe load by placing and distributing property safely in the trucks;

3.   Whether Plaintiff devoted a substantial part of his time to loading activities affecting the safety of operation of ODFL motor vehicles; and

4.   Whether Plaintiff's loading activities were "so trivial, casual or occasional" parts of his activities that he could not be classified as a loader within the meaning of the MCA.

Where the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be *de minimis*, the exemption will not apply to him in any workweek so long as there is no change in his duties (*Pyramid* supra; *Morris v. McComb*, 332 U.S. 422). If in particular workweeks other duties are assigned to him which result, in those workweeks, in his performance of activities directly affecting the safety of operation of motor vehicles in interstate commerce on the public highways, the exemption will be applicable to him those workweeks, but

not in the workweeks when he continues to perform the duties of the non-safety affecting job.

Accordingly, the facts here stand in clear conflict and there is a genuine issue of material fact as to Plaintiffs' status as a "loader" exempt under the MCA.

## V.    ANALYSIS OF THE MCA EXEMPTION CAN BE MADE ON A CLASS WIDE BASIS

ODFL argues the causes of action asserted in the Complaint are not appropriate for class or collective treatment because they cannot be resolved in the aggregate and because the Court would be forced to conduct fact-intensive, individualized analyses to determine the applicability of the Motor Carrier exemption for each class/collective member. ODFL's contentions have been rejected in at least one Circuit Court of Appeal.

The Bates Declaration describes ODFL's uniform policies and operations for "switchers" and dockworkers at Service Centers nationwide. Parallel class action. litigation has been brought in multiple jurisdictions involving the identical claims and defenses raised in the instant matter (*Saenz supra*; *Prieto v. Old Dominion Freight Line, Inc.*, S.D. Fla., Civ. Act. No. [18-20536-JLK, Feb. 12., 2018]; *James Adam Howard v. Old Dominion Freight Line, Inc.*, E.D. Tenn., [Civ. Act. No. 3:18-cv-00391, September 18, 2018]).

In motor carrier exemption cases, Circuit Courts of Appeal have split over the question whether to examine the employee's work functions on an individual or class-wide basis (See generally, Mongillo, Jason (2015) "Individual or Classwide?

Determining How the MCA Exemption to the FLSA's Overtime Rules Should Be Applied; compare *Troutt v. Stavola Bros.*, 107 F.3d 1104, 1108 [4th Cir 1997] (individual approach); *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 475 [5th Cir 2010] (class-wide approach)). There is no Second Circuit precedent on this perplexing issue of law.

We submit that the class-wide approach in *Songer* is appropriate in the instant litigation because the facts of this case, the Bates Declaration and the arguments advanced by the parties, do not support an individual analysis. The *Songer* plaintiffs were indisputably truck drivers and operated commercial vehicles to haul materials to and from mines and quarries (*Id* at 468). After noting that the MCA Exemption depended "'both on the class to which his employer belongs and the class of work involved in the employee's job'" (*Id* at 472, quoting 29 C.F.R. § 782.2(a)), the Fifth Circuit evaluated the plaintiff drivers' duties and work requirements as a group. The Court did not require proof that each individual employee regularly transported property by motor vehicle across state lines (*Id* at 474-75). In deciding to address the MCA Exemption for the plaintiffs as a group, the Court focused on the facts that "drivers [were or] could have been called upon to drive in interstate commerce during their employment," that their assignments changed often (on a daily basis), and that "any driver could have been assigned to an interstate trip" and thus was "subject to DOT safety regulations affecting the operations of trucks" (*Id* at 475).

18

In *Allen v. Coil Tubing Services, L.L.C.,* (755 F.3d 279 [2014]) the Fifth Circuit did not to focus on the circumstances of each employee's actual job, to determine whether that employee is exempted from overtime wage protection. Instead, the court concluded that, when a district court deems multiple employees' job duties and assignments to be, in the court's opinion, "sufficiently similar," the court may lump all of the employees together in a single "group" (the district court's word) or "class" (the majority's word) so as to determine on a "company-wide basis" the applicability of the MCA exemption "to that group as a whole."

ODFL has not provided any persuasive reason or cited any Second Circuit decision supporting a departure from the *Songer* holding or legal rationale.

In any event, ODFL's arguments in connection with the Plaintiff's qualifications and status to act as a class/collective representative are better suited for determination on a full record, after fact discovery is conducted.

## VI.    PLAINTIFF'S NYLL OVERTIME WAGE CLAIMS ARE MERITORIOUS

Labor Law article 19 is New York State's Minimum Wage Act. As part of the Act, Labor Law §653 allows the Commissioner of Labor to appoint a Wage Board to investigate the adequacy of wages and recommend appropriate wage rates (Labor Law §653 [1]; see also *Ballard v Community Home Care Referral Serv.,* 264 AD2d 747, 747 [2d Dept 1999]). The Wage Board may also recommend that the Commissioner of Labor promulgate overtime rate regulations (Labor Law §655 [5][b].) In accordance with this scheme, the Commissioner of Labor enacted 12 NYCRR 142-2.2 which provides:

> An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 et seq., the Fair Labor Standards Act of 1938 . . . In addition, an employer shall pay employees subject to the exemptions of section 13 of the Fair Labor Standards Act, as amended, . . . overtime at a wage rate of one and one-half times the basic minimum hourly rate.

ODFL relies heavily upon *Hayward v. IBI Armored Services, Inc.*, (supra) wherein the Second Circuit held:

> [T]he NYLL clearly states that for employees who are exempt from the FLSA under the Motor Carrier Exemption, employers must provide overtime compensation at a rate of one and one-half times the minimum wage

(*Id* at 576).

In *Hayward*, the plaintiff was paid $11 per hour in 2014 and $12 per hour in 2015 for all hours worked. At all times, his pay exceeded the minimum wage (New York's Minimum wage in 2015 was a maximum of $11 per hour). Thus, it is clear that 12 N.Y.C.R.R. § 142-2.2 applies equally to those earning minimum wage and those earning more. The court explicitly made this point, as follows:

> The first sentence's requirement to pay employees at a rate of one and one-half times the employees' regular rate applies equally to those earning minimum wage and those earning more—and therefore, the second sentence would have no additive value. Defendants' interpretation thus contravenes the principle that courts should construe statutes "in a manner that gives effect to all of their provisions.

(*United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 [2009]).

In the instant litigation, ODFL is attempting to conflate the plain meaning of the statutory language of 12 N.Y.C.R.R. § 142-2.2 and improperly carve out an exception for those employees who earn a regular hourly rate in excess of one and a half times the minimum wage. ODFL contends that throughout the statutory

period, Plaintiff's regular rate of pay far exceeded one- and one-half times the New York minimum wage (Dkt. 16-1). In September 2015, for example, the New York minimum wage was $11.00 per hour. The NYLL thus required that Plaintiff receive at least $16.50 for hours worked above 40 in a given week (*Hayward* at 576). At that time, Plaintiff was paid 17.00 per hour. His wages increased every year, and by 2019, when the New York minimum wage was $15.00 per hour, Plaintiff's pay rate had risen to $26.60 per hour, significantly more than the $22.50 overtime rate the NYLL requires (Dkt 16-1 at pp. 2, 366).

ODFL's argument is legally flawed. In *Edwards v Jet Blue Airways Corp.* (2008 NY Slip Op 28051 [19 Misc 3d 345] [Sup Kings 2008]), it was undisputed that employer Jet Blue paid plaintiff at least his regular rate, which was well above the rate of one and one-half times the basic minimum hourly rate, for all hours worked over forty. Therefore, Jet Blue argued that the complaint should be dismissed because it had fully complied with 12 NYCRR § 142-2.2 by paying plaintiff at least his regular rate for all hours worked. The court disagreed, holding:

> Logic dictates that the Department of Labor would not penalize someone for earning above the minimum wage. Therefore, in a scenario such as this, where a plaintiff is earning more than minimum wage, yet is exempt from the FLSA, plaintiff's overtime pay under the reduced overtime provision of 12 NYCRR 142-2.2 should logically be calculated as equal to his regular pay rate plus one half times New York State's minimum wage.

(*Id*).

In the instant litigation, under similar facts, Plaintiff is also seeking to recover damages for overtime pay under the reduced overtime provision of 12

NYCRR 142-2.2, calculated as equal to his regular pay rate plus ***one half times*** New York State's minimum wage.

In *Edwards v. Jet Blue Airways Corp.*, (21 Misc.3d 1107(A), 873 N.Y.S.2d 233, 2008 WL 4482409 [Sup. Kings 2008]), Jet Blue moved to reargue and renew the earlier adverse decision of the court, relying upon the New York Department of Labor's Opinion letter dated April 17, 2008, letter, which for the first time, applied 12 NYCRR § 142-2.2 to the unique facts of that case. In doing so, DOL, found that it would be improper to pay plaintiff one and one-half times the minimum wage for overtime where the employee already earns more than that amount as his or her regular hourly pay.

Applying Labor Law §§ 191 and 193 to the facts of that case, DOL determined that payment of the employee's regular hourly pay rate for overtime is sufficient where the employee's regular hourly pay rate is greater than one and one-half times the minimum wage.

According to DOL, an employer which pays its employee at least his or her agreed regular rate for all hours worked, where that rate is greater than one and one-half times the minimum wage, complies with 12 NYCRR § 142-2.2 although payment of a lesser amount would be an illegal deduction of wages and not in conformity with the agreed terms of employment.

In *Edwards* #2, the court granted renewal, deferring to the DOL opinion and stated:

Had DOL's application of 12 NYCRR § 142-2.2 to the facts of this case been brought to the Court's attention on the motion to dismiss, Jet Blue's motion would have been granted.

We submit that the NY DOL's interpretation of 12 NYCRR § 142-2.2 embraces a regulatory construction that conflicts with the plain meaning of the promulgated language and carves out an improper exception for workers who are properly entitled to be paid overtime and make more than the minimum wage. The regulation provides in relevant part:

> An employer shall pay an employee for overtime at a wage rate of one- and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. § 201 et seq., the Fair Labor Standards Act of 1938, as amended; provided, however, that the exemptions set forth in section 13(a)(2) and (4) shall not apply. In addition, an employer shall pay employees subject to the exemptions of section 13 of the Fair Labor Standards Act, as amended, except employees subject to section 13(a)(2) and (4) of such act, *overtime at a wage rate of one and one-half times the basic minimum hourly rate*. (Emphasis added).

We submit that *Edwards* #2 decision was clear error of law and would not be followed by the higher New York appellate courts. When reviewing agency determinations, New York courts have ruled that there are, in fact, two standards of review. While courts defer to the governmental agency which administers the statute when the matter "involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom," (*Kurcsics v. Merchants Mut. Ins. Co.*, 49 N.Y.2d 451, 459 [NY 1980]), deference is not required when "the question is one of pure legal

interpretation of statutory terms" (*Toys "R" Us v. Silva*, 89 N.Y.2d 411, 419 [NY 1996]).

An agency's interpretation of its own regulation is entitled to deference unless it is unreasonable or irrational (see *Matter of Visiting Nurse Serv. of N.Y. Home Care v New York State Dept. of Health*, 5 NY3d 499 [2005]; *Queens Blvd. Extended Care Facility, Inc. v Whalen*, 15 AD3d 378 [2005]). However, the courts are not required to embrace a regulatory construction that conflicts with the plain meaning of the promulgated language (*Visiting Nurse Serv. of N.Y. Home Care*, 5 NY3d at 506; see *Matter of Heinlein v New York State Off. of Children & Family Servs.*, 60 AD3d 1472, 1473 [4th Dept 2009]).

It is well established that in exercising its rule-making authority an administrative agency cannot extend the meaning of the statutory language to apply to situations not intended to be embraced within the statute (*Matter of Jones v Berman*, 37 N.Y.2d 42). Nor may an agency promulgate a rule out of harmony with or inconsistent with the plain meaning of the statutory language (*Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.*, 45 N.Y.2d 471; *Matter of Harbolic v Berger*, 43 N.Y.2d 102).

As in all statutory construction cases, courts "assum[e] that the ordinary meaning of [the statutory] language accurately expresses the legislative purpose" (*Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 175 [2009] (alteration in original)). In interpreting a statutory provision, judicial analysis begins with "the plain meaning of [the] law's text, and, absent ambiguity, will generally end there"

(*United States v. Balde*, 943 F.3d 73, 81 [2d Cir. 2019] ("In determining the meaning of a statutory provision, we look first to its language, giving the words used their ordinary meaning." Only if the text is ambiguous do we "turn to canons of statutory construction for assistance in interpreting the statute" (*Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 111 [2d Cir. 2015]).

Here, there is nothing in 12 N.Y.C.R.R. § 142-2.2 referencing [a] employees who earn an hourly wage in excess of minimum wage; [b] who are paid straight time regular pay for hours in excess of 40; [c] who are paid straight time regular pay for hours in excess of 40 in an amount greater than one and one-half times the basic minimum hourly rate.

In the instant litigation, it is undisputed that Plaintiff did not receive any overtime compensation for workweeks in excess of 40. ODFL's own records make no mention of overtime compensation. The records demonstrate that ODFL voluntarily determined to make payment of straight time regular pay for all hours over 40. As such, in applying the ordinary meaning of the language in 12 N.Y.C.R.R. § 142-2.2., and the legal rationale in *Edwards* #1, we submit that Plaintiff is entitled to overtime compensation calculated by multiplying one-half the minimum wage times number of hours in excess of 40 for each work week.

The effect of adopting the NY DOL's interpretation would be to carve out an improper exception to 12 N.Y.C.R.R. §142-2.2 for workers who are properly entitled to be paid overtime and make more than the minimum wage. As this is a question of legal interpretation, deference is not required. ODFL does not offer any

arguments that the regulation's language itself dictates this exception, and no Court since *Edwards* #2 has made such a determination.

New York's Labor Law ("NYLL") is the state analogue to the federal FLSA and mirrors the FLSA in compensation provisions regarding minimum hourly wages and overtime (*Chun Jie Yin v. Kim*, 2008 WL 906736 [EDNY 2008]). Congress declared its intention in FLSA "to correct and as rapidly as practicable to eliminate" labor conditions "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," without substantially reducing employment or earning power (29 U.S.C. §202). The courts have repeatedly affirmed that "the remedial nature of the FLSA warrants an expansive interpretation of its provisions so that they will have the widest possible impact in the national economy" (*Irizarry v. Catsimatidis*, 722 F.3d 99, 110 [2d Cir. 2013]).

The NY DOL interpretation of 12 N.Y.C.R.R. § 142-2.2 contravenes the legislative intent of the FLSA and NYLL. It is irrational, unreasonable and extends the meaning of the statutory language to cover situations not intended to be embraced within the regulation (*Matter of Jones v Berman*, 37 N.Y.2d 42).

## VII.   PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND THE COMPLAINT

Plaintiff seeks leave to amend his complaint (in the form annexed hereto as **Exhibit "C"**) to redefine the Class and to allege an alternative cause of action, pursuant to the small vehicle exception found in SAFETEA–LU Technical Corrections Act of 2008, Pub. L. No. 110-244, 122 Stat. 1572 ("TCA"), under which

Section 306 provides that the FLSA is applicable to "a covered employee" notwithstanding the MCA Exemption.

Based upon the Bates Declaration, the job title of "switcher" and "dockworker" are essentially interchangeable.

> Employees titled Switcher do not perform only switching duties in the yard. Switching is a function of the dock operations. In nearly all cases, employees are hired as Dockworkers who work solely on the dock, and the employees progress from there to performing switching duties after they have gained sufficient experience. If a Dockworker begins performing switching duties, and is assigned the job title of Switcher, that employee must still perform duties on the dock

(Exhibit "B" ¶5).

Thus, the nature and extent of each employee's duties (switching or loading/unloading) are dependent day-to-day on the Supervisors managing the Service Center's work, and the business needs at the Service Center. For example, Supervisors will call employees in from the yard to work on the dock based on the flow of the operations and the number of shipments to be processed (Exhibit "B" ¶6).

Based upon the foregoing, Plaintiff requests that the Rule 23 and FLSA Class/Collective definition be amended, as follows:

> All current and former full time "switchers" and "dockworkers" who were employed by ODFL in New York on or after the date that is six [6] years preceding the filing of the Complaint; whose job functions and responsibilities included (1) moving trailers weighing more and/or less than 10,000 pounds to designated loading/unloading sites within the yard; and (2) loading and unloading trailers weighing more and/or less than 10,000 pounds, within the yard.

Fed. R. Civ. P. 15(a) provides that leave to amend "shall be freely given when justice so requires." "[T]his mandate is to be heeded" (*Foman v. Davis*, 371 U.S. 178, 182 [1962]). As the Supreme Court concluded in *Foman*, a party "ought to be

afforded an opportunity to test his claim on the merits," except in those instances where (1) the party's motion to amend is impelled by "bad faith or dilatory motive," id.; (2) the party's adversary can demonstrate that he will suffer actual prejudice if the motion to amend its granted (*Middle Atlantic Utilities Co. v. S.M.W. Development Corp.*, 392 F.2d 380 [2d Cir 1968]; or (3) the proposed amendment would constitute no more than a futile exercise (*Friedman v. Chesapeake & O.R. Co.*, 261 F. Supp. 728 [SDNY 1966]).

None of the reasons for denial of the amendment of the Complaint, as set forth in *Foman* exist at bar. Plaintiff should be afforded an opportunity to test his claims on the merits. Clearly, there is no undue delay, bad faith, or dilatory motive on the part of the Plaintiff. Because issue has not yet been joined in this case, ODFL can make no legitimate argument that it will be unduly prejudiced by virtue of allowance of the amendment. Lastly, any argument of futility is addressed above and should be rejected. Leave to amend should be granted.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion for an order dismissing the Complaint.

Dated: February 2, 2022

BLAU LEONARD LAW GROUP, LLC

By: _____

Steven Bennett Blau
Shelly A. Leonard
23 Green Street, Suite 105
Huntington, NY 11743
*Attorneys for Plaintiff*
