UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X
RUSBER GONZALEZ MENDEZ,
*individually and on behalf of all others
similarly situated,*

                    Plaintiff,

          -against-

OLD DOMINION FREIGHT LINE, INC.,

                    Defendant.
---------------------------------------------------------X

**MEMORANDUM AND ORDER**
21-CV-5289 (RPK) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

Plaintiff Rusber Gonzalez Mendez ("Plaintiff") initiated this putative collective and class action against Defendant Old Dominion Freight Line, Inc. ("Old Dominion" or "ODFL"), on September 23, 2021. (*See* Complaint ("Compl."), ECF No. 1.) Plaintiff alleges claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), §§ 190 *et seq.* and 650 *et seq.*, related to his work for Old Dominion, one of the largest motor carriers in North America. (*Id.* ¶¶ 1, 9.) Plaintiff alleges that he performed work for Old Dominion that was covered under the FLSA and the NYLL, but that he was not properly compensated for all of the hours he worked. (*Id.* ¶¶ 15–48.) Plaintiff's complaint also includes collective action and class action allegations. (*Id.* ¶¶ 49–75.)

Currently pending before the Court is Plaintiff's motion for conditional certification of a collective action under the FLSA. (Mot. for Collective Action, ECF No. 12; Nov. 5, 2021 ECF Order; Nov. 12, 2021 ECF Order.) For the reasons set forth below, the motion is denied without prejudice.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

According to the complaint, Old Dominion "is one of the largest North American less-than-truckload ('LTL') motor carriers, providing regional, inter-regional and national LTL services through an expansive network of service centers located throughout the continental United States." (Compl., ECF No. 1, ¶ 9.) It is also a "foreign business corporation" that "is authorized and regularly transacts business in New York." (*Id.* ¶¶ 3–4.) Plaintiff alleges that: "As of June 2021, [Old Dominion] had more than 22,000 full time employees and operated approximately 248 service centers across the United States." (*Id.* ¶ 10.)

Plaintiff further alleges that Old Dominion employed him as a "switcher" or a "yard switcher" from 2016 to November 2019. (*Id.* ¶¶ 12–13, 16, 18.) Plaintiff claims that during this time period, he "was required . . . [to] work more than forty (40) hours in a week" and worked "at least 55 hours per week." (*Id.* ¶¶ 23, 25.) Plaintiff further claims that "[i]n 2019, [he] was paid hourly at a rate of approximately $26.60," but that "[f]rom 2016 to 2019, [Old Dominion] failed to pay Plaintiff overtime compensation at 1.5 times his regular rate of pay for all workweeks in excess of 40 hours." (*Id.* ¶¶ 26, 29.) Plaintiff also contends that Old Dominion "fabricated false time records which understated the true number of hours Plaintiff worked each week." (*Id.* ¶ 32.) Plaintiff further alleges that he was "regularly forced to miss lunch breaks" because Old Dominion required Plaintiff "to be working during that time" but that Plaintiff "was not compensated for such time worked." (*Id.* ¶¶ 37, 41.) Based on these allegations, Plaintiff avers that Old Dominion "failed to pay Plaintiff all wages due and owing at the time of termination of his employment, as required by NYLL § 191" and that "[a]s a result of its failure to compensate for all hours worked and all overtime compensation, [Old Dominion] failed

2

to pay Plaintiff for all wages due and owing under the NYLL." (*Id.* ¶¶ 43, 46.) Plaintiff alleges the same facts as the above for "similarly situated switchers" who were employed by Old Dominion. (*See id.* ¶¶ 12, 13, 18, 24, 28, 30, 33, 35, 38, 42, 44, 47.)

On the basis of the foregoing allegations, Plaintiff asserts claims against Old Dominion for violating the overtime pay provisions of the FLSA and the NYLL and the meal period provision of the NYLL, and for violating NYLL § 191 by failing to pay Plaintiff "all wages due and owing at the time of termination of [his] employment." (*Id.* ¶¶ 79, 80, 85, 90, 91, 98, 100.) Plaintiff also includes allegations and claims on behalf of a putative class under Federal Rule of Civil Procedure 23 and as a conditional collective action under the FLSA. (*See id.* ¶¶ 49–96.)

On October 28, 2021, Plaintiff filed a letter requesting a pre-motion conference to discuss filing a motion for conditional certification and Old Dominion filed a reply in opposition on November 3, 2021. (Pl.'s Pre-Mot. Conf. Letter, ECF No. 10; Def.'s Reply in Opp'n, ECF No. 11.) Judge Kovner found that a pre-motion conference was not necessary and referred Plaintiff's motion for conditional certification to the undersigned Magistrate Judge. (Nov. 5, 2021 ECF Order.)[1] Plaintiff filed his motion to certify an FLSA collective action and accompanying documents on November 11, 2021. (Mot. for Collective Action, ECF No. 12; Pl.'s Mem. in Supp., ECF No. 13.)

On November 12, 2021, however, Defendant filed a motion requesting a pre-motion conference to discuss filing a motion to dismiss and requesting a stay of the briefing of Plaintiff's conditional certification motion. (Def.'s Pre-Mot. Conf. Letter, ECF

---

[1] After Old Dominion filed a letter requesting clarification of the Court's November 5, 2021 order, the Court reaffirmed that Plaintiff had permission to file his motion to certify an FLSA collective action and that the motion for conditional certification remained referred to the undersigned Magistrate Judge. (Nov. 11, 2021 Letter Requesting Clarification, ECF No. 14; Nov. 12, 2021 ECF Order.)

No. 16.) Plaintiff filed a letter in opposition on November 15, 2021. (Pl.'s Letter in Opp'n, ECF No. 17.) On November 15, 2021, the undersigned set the briefing schedule for the response and reply as to Plaintiff's motion for conditional certification. (Nov. 15, 2021 ECF Order.) On November 18, 2021, Judge Kovner determined that a pre-motion conference for Defendant's proposed motion to dismiss was unnecessary, set a briefing schedule, and referred Defendant's request to stay briefing of the conditional certification motion to the undersigned Magistrate Judge. (Nov. 18, 2021 ECF Order.) The next day, Defendant filed a motion to stay all proceedings, including briefing of the conditional certification motion, until Defendant's motion to dismiss was briefed and decided. (Def.'s Mot. to Stay, ECF No. 18.) On November 22, 2021, the Court granted Defendant's motion to stay, in part, and stayed briefing on Plaintiff's motion for conditional certification. (Nov. 22, 2021 ECF Order.)

On November 24, 2021, Plaintiff filed a motion for reconsideration of the Court's decision on Defendant's motion to stay. (Pl.'s Mot. for Reconsideration, ECF No. 19.) After Defendant's opposition and Plaintiff's reply were filed, the Court held a status conference on January 11, 2022, during which the Court denied Plaintiff's motion for reconsideration and deferred decision on Plaintiff's motion for certification of a collective action. (Jan. 11, 2022 ECF Minute Entry and Order; *see also* Def.'s Reply in Opp'n, ECF No. 20; Pl.'s Reply in Supp., ECF No. 21.) The Court explained that "the applicable law, and the arguments underlying Defendant's anticipated motion to dismiss . . . if successful, could impact the allegations in the complaint and / or the suitability of Mr. Mendez to serve as lead Plaintiff for a collective action under Section 216(b) of the FLSA." (Jan. 11, 2022 ECF Minute Entry and Order.)

The parties filed the fully briefed motion to dismiss on February 16, 2022. (Mot. to Dismiss, ECF No. 31; Def.'s Mem. in Supp., ECF No. 32; Pl.'s Resp. in Opp'n, ECF No.

4

33; Def.'s Reply in Supp., ECF No. 34.) Judge Kovner later referred the motion to dismiss to the undersigned Magistrate Judge. (Apr. 5, 2022 ECF Referral Order.) Because of the significant overlap in issues relevant to consideration of Defendant's motion to dismiss and Plaintiff's motion for collective action certification, the undersigned ordered the parties to appear for oral argument on August 1, 2022, regarding both motions. (*See* July 26, 2022 ECF Scheduling Order; Aug. 1, 2022 ECF Minute Entry and Order; Aug. 1, 2022 Hearing Transcript ("Hr'g Tr."), ECF No. 36.)

For the reasons set forth below, Plaintiff's motion to certify an FLSA collective action is denied without prejudice.[2]

## DISCUSSION

After filing the original complaint, Plaintiff moved to certify a collective under the FLSA, arguing that he and "the Collective Class are 'similarly situated' under 29 U.S.C. § 216(b)." (Mot. for Collective Action, ECF No. 12; Pl.'s Mem. in Supp., ECF No. 13, at 2.) More specifically, Plaintiff seeks conditional collective certification of the following class:

> All individuals who: (1) worked for ODFL in the State of New York at any time during the period between September 23, 2018 and the pendency of this action ("the Relevant Time Period"); (2) worked full time in the job title of Switcher; (3) were primarily engaged in moving trailers to designated loading and unloading sites on ODFL's premises; (4) never moved trailers or drove trucks on public highways; (5) worked more than 40 hours in any workweek during the Relevant Time Period; and (6) were not paid the overtime premium (i.e., time and one-half their regular hourly rates of pay) for all hours worked over 40 in a week.

(Pl.'s Mem. in Supp., ECF No. 13, at 1.) Since the time of filing the complaint, Plaintiff has sought leave to file an amended complaint, which this Court recommends granting

---

[2] It is well settled that a magistrate judge has authority to decide a motion for certification of a collective action. *See, e.g.*, *Thompson v. Glob. Contact Servs., LLC*, No. 20-CV-651 (MKB) (SJB), 2021 WL 3087568, at *1 n.4 (E.D.N.Y. July 21, 2021); *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 383–84 (E.D.N.Y. 2010).

in a Report and Recommendation issued separately from this opinion. (*See* Report & Recommendation, ECF No. 37.)

## I.    Legal Standards

Section 216(b) of the FLSA provides employees with a right of action on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). To determine whether an employee should be permitted to bring a "collective action" under the FLSA, courts in the Second Circuit apply a two-step analysis for certification. *See Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010); *Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 316 (E.D.N.Y. 2016). "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555. If the Court finds at the first step that "the putative class is sufficiently similarly situated, the action will be conditionally certified and each class member may then consent in writing to 'opt-in' to the litigation." *Agonath v. Interstate Home Loans Ctr., Inc.*, No. 17-CV-5267 (JS) (SIL), 2019 WL 1060627, at *2 (E.D.N.Y. Mar. 6, 2019) (citing, *inter alia*, 29 U.S.C. § 216(b)). The second step, sometimes called the "decertification stage," involves determining "whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs," and is made with the benefit of a fuller record. *Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 118 (E.D.N.Y. 2020); *see also Myers*, 624 F.3d at 555.

"The instant motion concerns only the first step: whether the proposed opt-in members are 'similarly situated' such that conditional certification should be granted." *Zaldivar*, 166 F. Supp. 3d at 317. Satisfying the first prong for conditional certification requires that the plaintiff "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"

6

*Myers*, 624 F.3d at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *see also id.* ("[T]he purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." (emphasis in original)); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus of this inquiry . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated.").

At this first stage, district courts examine pleadings and affidavits, but "do[] not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations." *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 385 (E.D.N.Y. 2010). In addition, while the "'modest factual showing'" is deemed "a low standard of proof," it cannot be satisfied by "'unsupported assertions.'" *Myers*, 624 F.3d at 555 (quoting *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991)); *see also Thompson v. Glob. Contact Servs., LLC*, No. 20-CV-651 (MKB) (SJB), 2021 WL 3087568, at *3 (E.D.N.Y. July 21, 2021); *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016). For example, a plaintiff seeking certification must offer "concrete facts evidencing a common scheme or plan of wage and hour violations for employees engaged in different job functions." *Mata v. Foodbridge LLC*, No. 14-CV-8754 (ER), 2015 WL 3457293, at *3 (S.D.N.Y. June 1, 2015).

"Nevertheless, while a plaintiff's 'burden of proof is low, it is not nonexistent — certification is not automatic.'" *Sanchez v. JMP Ventures, L.L.C.*, No. 13-CV-7264 (KBF) 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014) (quotation marks omitted) (quoting *Romero v. H.B. Auto. Grp., Inc.*, No. 11-CV-386 (CM), 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012)). Rather, to assure the Court of the basis of a party's knowledge, plaintiffs should include details as to "where or when the[ir] observations or conversations [with

potential collective members] occurred, which is critical in order for the Court to determine the appropriate scope of the proposed class." *Id.* at \*2. There must also "be 'some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims.'" *Perez v. La Abundancia Bakery & Rest. Inc.*, No. 17-CV-656 (RLM) 2017 WL 3382068, at \*6 (E.D.N.Y. Aug. 4, 2017) (quotation marks omitted) (quoting *Jenkins v. TJX Cos. Inc.*, 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012)).

## II.   Analysis

Here, Plaintiff seeks to certify a collective of all "individuals who worked for [Old Dominion] in the role of a 'switcher' . . . during the period between September 23, 2018 through the pendency of this action" at Old Dominion's eight yards in New York. (Pl.'s Mem. in Supp., ECF No. 13, at 2, 12–14; Def.'s Mem. in Supp., ECF No. 32, at 1.) Plaintiff argues that "the declarations and related filings show that Plaintiff and the Collective Class are similarly situated, and that Old Dominion failed to pay overtime to 'switchers' at numerous locations across the country." (Pl.'s Mem. in Supp., ECF No. 13, at 13.)

The Court notes that Plaintiff argues in further support of his putative collective in his opposition to Old Dominion's motion to dismiss. (*See* Pl.'s Resp. in Opp'n, ECF No. 33, at 17–19.) In so doing, Plaintiff relies, in part, on a 2019 affidavit signed by David Bates, the Senior Vice President of Operations at Old Dominion, prepared in connection with a case filed in the Northern District of Georgia.[3] (*See* Pl.'s Resp. in

---

[3] According to Bates:

Employees titled Switcher do not perform only switching duties in the yard. Switching is a function of the dock operations. In nearly all cases, employees are hired as Dockworkers who work solely on the dock, and the employees progress from there to performing switching duties after they have gained sufficient experience. If a Dockworker begins performing switching duties, and is assigned the job title of Switcher, that employee must still perform duties on the dock.

Opp'n, ECF No. 33, at 17; Bates Decl., ECF No. 33-2, ¶ 2.) Plaintiff contends that the

Bates declaration "describes [Old Dominion's] uniform policies and operations for

'switchers' and dockworkers at Service Centers nationwide." (Pl.'s Resp. in Opp'n, ECF

No. 33, at 17.) He further argues that parallel class action litigation has been brought in

multiple jurisdictions. (*Id.*) Accordingly, Plaintiff argues that the Court should evaluate

the purported collective of "switchers" as a group. (*Id.* at 18 (citing *Songer v. Dillon Res.,*

*Inc.*, 618 F.3d 467, 472 (5th Cir 2010)).)

      In moving to dismiss the class and collective action allegations, Defendant argues

that this case is not appropriate for collective treatment because Plaintiff's work was

subject to the Motor Carrier Act ("MCA") exemption of the FLSA.[4] (Def.'s Mem. in

Supp., ECF No. 32, at 4–7.) Defendant accordingly argues that treating the switchers as

a collective would be unworkable because "the Court would be forced to conduct fact-

intensive, individualized analyses of the job duties and working hours of each collective

class member."[5] (*Id.* at 5 (citing *Heredia v. Americare, Inc.*, No. 17-CV-6219 (WHP), 2018

---

(Bates Decl., ECF No. 33-2, ¶ 14.) Bates further explained that: "The nature and extent of each
employee's duties (including the time, if any, that they spend on switching duties) are
dependent day-to-day on the Supervisors managing the Service Center's work, the employees'
own preferences, and the business needs at the Service Center." (*Id.* ¶ 15.)

    [4] Certain employment relationships are exempt from the overtime pay provisions of the
FLSA. *See* 29 U.S.C. § 213(b) (setting forth the relevant exemptions). The Motor Carrier Act
("MCA") exemption states that "any employee with respect to whom the Secretary of
Transportation has power to establish qualifications and maximum hours of service pursuant to
the provisions of section 31502 of title 49" does not retain FLSA protection for overtime pay. 29
U.S.C. § 213(b)(1). Under the MCA, the Secretary of Transportation has jurisdiction over the
"qualifications and maximum hours" for employees of a "motor carrier" and "motor private
carrier." 49 U.S.C. § 31502(b). "Whether the motor carrier exemption applies to an employee
depends on the nature of both the employer's and the employee's activities." *Walden v.
Sanitation Salvage Corp.*, No. 14-CV-112 (ER) & No. 14-CV-7759 (ER), 2016 WL 7243547, at *2
(S.D.N.Y. Dec. 13, 2016) (citing 29 C.F.R. § 782.2(a)).

    [5] While Old Dominion did not respond separately to Plaintiff's motion for collective
action certification, Defendant included a substantial analysis regarding the collective action
allegations in its memorandum in support of the motion to dismiss. (*See* Def.'s Mem. in Supp.,

WL 2332068, at *4 (S.D.N.Y. May 23, 2018)).) Additionally, since Plaintiff also seeks to file an amended complaint, Defendant contends that the previously-filed motion for conditional certification is moot.[6] (Hr'g Tr., ECF No. 36, at 9:8–12.)

    As discussed in the Report and Recommendation filed in connection with Defendants' motion to dismiss, the Court finds that there are significant factual questions surrounding whether Plaintiff is subject to the MCA exemption, which may preclude him from pursuing his overtime claims under the FLSA. (*See* Report & Recommendation, ECF No. 37, at 11–15.) If he is exempt from the FLSA's protections, he would not be an appropriate lead Plaintiff for a collective action because he could not effectively prosecute a case for overtime violations.[7] *See Mata*, 2015 WL 3457293, at *3 (observing that a plaintiff seeking collective certification must offer "concrete facts evidencing a common scheme or plan of wage and hour violations").) In addition, and as discussed further in the separate Report and Recommendation, even if some of Plaintiff's work was not exempt under the FLSA, the regulations at issue contemplate a week-by-week analysis to determine whether the exemption applies. (Report & Recommendation, ECF No. 37, at 11 (citing *Tang v. Wing Keung Enterprises, Inc.*, 210 F. Supp. 3d 376, 404 (E.D.N.Y. 2016) (for the proposition that, pursuant to 29 C.F.R.

---

ECF No. 32, at 4–5; *see also* Def.'s Reply in Supp., ECF No. 34, at 5–7.) Moreover, during the August 1 hearing, the Court heard arguments from both parties on the motion and advised the parties that a ruling on Plaintiff's motion for collective action certification would be forthcoming. (Hr'g Tr., ECF No. 36, at 26:18–23.)

    [6] Finding that Plaintiff has failed to make the requisite factual showing in his current motion, the Court need not reach that issue here.

    [7] In attempting to argue that the MCA exemption does not apply, Plaintiff contends that there are factual conflicts between his allegations and Defendant's position, that there is "a genuine issue of material fact as to Plaintiff[']s[] status as a 'loader' exempt under the MCA," and that the exemption may be applicable to Plaintiff in certain workweeks but not in other workweeks. (Pl.'s Mem. in Opp'n, ECF No. 33, at 16, 17.) This type of granular exemption analysis is in significant tension with the premise of an FLSA collective, i.e., that the employees were similarly situated.

10

§§ 782.2(b)(3) and 782.2(b)(4), a "week-by-week approach" was correct when determining whether a plaintiff falls under the MCA)).)

Moreover, Plaintiff's declaration and the declarations of two switchers from Georgia fail to provide a sufficient basis for drawing the inference that Plaintiff is similarly situated to the other switchers throughout New York State. (*See* Pl.'s Decl., ECF No. 13-1; Saenz and Andrews Decls., ECF No. 13-2.) The declarations provided by Saenz and Andrews, the switchers from Georgia, describe their duties as limited to moving "trailers to designated loading and unloading sites within the yard." (Saenz and Andrews Decls., ECF No. 13-2, ¶ 6.) In contrast, Plaintiff describes his job duties as moving trailers, but also as follows:

> During my [Old Dominion] employment in Brooklyn, from time to time, I would assist dock workers in loading/unloading trailers. I would furnish physical assistance, or operate a forklift, when necessary, in loading heavy pieces of freight, or deposit[] pieces of freight in the vehicle for someone else to distribute and secure in place or arrange pieces of freight in the vehicle pursuant to instructions given by dock workers in each instance.

(Pl.'s Decl., ECF No. 13-1, ¶ 5.) Accordingly, other than the declarations from the two switchers in Georgia, whose job duties appear distinguishable from Plaintiff's (and who are thus subject to a different MCA exemption analysis), there is a lack of evidence to establish that Plaintiff's work conditions and pay practices render him "similarly situated" to all the other switchers in all the Old Dominion yards in the state of New York. *See Murray v. City of New York, New York*, No. 16-CV-8072 (PKC), 2017 WL 3531552, at *5 (S.D.N.Y. Aug. 16, 2017) (denying plaintiff's motion for conditional certification because the descriptions of similarly situated employees were "overbroad and conclusory in nature").

While employees in a proposed collective action need not be identically situated, a plaintiff must show that "'the differences among the plaintiffs do not outweigh the

similarities in the practices to which they claim to have been subjected.'" *Ayers v. SGS Control Services, Inc.*, No. 03-CV-9077 (RMB), 2007 WL 646326, at *5 (S.D.N.Y. Feb. 27, 2007) (quoting *Wilks v. Pep Boys*, No. 02-CV-0837, 2006 WL 2821700, at *5–6 (M.D. Tenn. Sept. 26, 2006)); *see also Colon v. Major Perry St. Corp.*, No. 12-CV-3788 (JPO), 2013 WL 3328223, at *7 (S.D.N.Y. July 2, 2013) (denying conditional certification as to a subset of employees with "different hours and tasks, different overtime policies, and different compensation schemes," and noting that that "conclusion [was] bolstered by the near-total absence of evidence concerning the [subset of employees]").

As discussed above, and for the reasons discussed further in the Court's corresponding Report and Recommendation as to Old Dominion's motion to dismiss, the Court finds that a determination of the job duties and applicable payment regulations of the named Plaintiff here would require a highly fact-intensive analysis. (Report & Recommendation, ECF No. 37, at 11–15.) Accordingly, on the basis of the current record, and in light of the questions as to whether he suffered a wage and hour violation at all, the Court finds that Plaintiff has not made the modest factual showing necessary to establish that he was similarly situated to the other workers "with respect to their allegations that the law has been violated" at this juncture. *Young*, 229 F.R.D. at 54. The Court also concludes that Plaintiff has not made the modest factual showing necessary to conclude that he was similarly situated to the other employees of Old Dominion whom he seeks to represent. *See Sanchez*, 2014 WL 465542, at *2 (finding that "a list of generalized allegations that have been molded into a declaration which reads similarly to the complaint" are "the kind of unsupported assertions and conclusory allegations that courts in this District have found to be insufficient to conditionally certify a class under § 216(b)"). For these reasons, the Court denies Plaintiff's motion for collective certification without prejudice.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to certify an FLSA collective action

(ECF No. 12) is denied without prejudice.

**SO ORDERED.**

Dated:  Brooklyn, New York
        August 5, 2022

_____
*Taryn A. Merkl*

TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE